

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2007

# USA v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Smith" (2007). *2007 Decisions*. Paper 1082.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1082

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 06-1788

_____

UNITED STATES OF AMERICA

v.

DANIEL SMITH,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00227)
District Judge: Honorable Mary A. McLaughlin

_____

Submitted Under Third Circuit 34.1(a)
May 8, 2007

Before: RENDELL and JORDAN, *Circuit Judges*
and VANASKIE*, *District Judge.*

(Filed May 21, 2007)

_____

OPINION OF THE COURT

_____

_____

   *Honorable Thomas I. Vanaskie, District Court Judge for the Middle District of
Pennsylvania, sitting by designation

JORDAN, *Circuit Judge*.

Daniel Smith appeals the decision of the United States District Court for the Eastern District of Pennsylvania denying his motion to suppress evidence obtained, in part, as a result of a warrantless entry into a residence at 512 High Street in Norristown, Pennsylvania. Smith contends that the warrantless entry was improper because the police lacked both probable cause and exigent circumstances. Smith also argues that a search warrant that subsequently issued for 512 High Street was invalid because it was based on evidence obtained as a result of the initial warrantless entry. Smith finally asserts, in a single sentence, that statements elicited from him by the police must be suppressed because they were obtained without his first being given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). For the reasons that follow, we will affirm the decision of the District Court.

I.

On the morning of April 20, 2003, multiple law enforcement agencies executed over forty search warrants throughout Philadelphia County and Montgomery County, thirteen of them in Norristown, as part of an extensive investigation into illegal drug dealing. Because members of the targeted drug organization were in constant communication with one another, the police were concerned that, if the warrants were executed at different times, news of the searches would spread quickly to the other members and evidence would be destroyed. Therefore, more than one hundred law enforcement officers attempted to execute the warrants at approximately the same time.

2

One of the search warrants was for 1222 Green Street in Norristown, which the police believed to be Smith's residence. However, when police entered the house, Smith was not there. The owner of the home, Smith's former girlfriend, informed the police that she had thrown him out of the house earlier that week and that he was now living with his mother at 512 High Street in Norristown. The owner also told the police that, while she had never seen Smith sell drugs, he often kept a white powdery substance in the house and packaged it in small bags. According to her, when she kicked Smith out of her house, she threw into the street a bottle containing white powder and a bottle marked acetone, both of which belonged to Smith, and she also threw out his electronic scale. She showed the police an area near her house where some of the white powdery substance was still left on the ground, along with the batteries that had fallen out of the scale when she threw it.

Based on that information, several officers went to 512 High Street to see if Smith was there. When one of the officers knocked on the door, Smith looked out a window and immediately closed the curtains. The officers became concerned that Smith would destroy evidence, so they forcibly entered the home. They searched the house to the extent necessary to ensure that everyone inside the house was gathered in one location, and that no weapons were within reach. Smith was found in the living room, and, in plain view, an officer saw what he believed to be a bag of marijuana and a bag of cocaine. The officers then waited for a search warrant. Without any solicitation from the officers, Smith told them that the contraband they had found in the house belonged to him.

3

After a search warrant for 512 High Street was issued, the officers conducted a full search of the premises. They seized a large amount of cocaine packaged in individual plastic bags, a small amount of marijuana, a handgun, and a shotgun. During the search, an officer provided Smith with a copy of the search warrant and informed him of his constitutional rights. Smith reiterated that the contraband belonged to him. He was then arrested and transported to the County Detectives' Office, where an officer again read Smith his rights and took a statement from him. Smith admitted that he sold cocaine, and that the cocaine, the marijuana, the handgun, and the shotgun seized from 512 High Street were his.

## II.

The District Court held that the warrantless entry into 512 High Street was justified because the police officers had probable cause to believe that drugs and other evidence were present and because they had reasonably concluded that Smith would destroy the evidence before a search warrant could be obtained. The District Court found that the information used to obtain the warrant for 1222 Green Street, along with the statement given by Smith's former girlfriend, provided probable cause with respect to 512 High Street. More specifically, the affidavit attached to the warrant for 1222 Green Street stated that a confidential informant had told police that Smith sold cocaine, that the police had observed Smith sell cocaine, and that Smith had been in communication with one of the main targets of the Norristown drug investigation. And, as discussed above, Smith's former girlfriend told police that she believed Smith was a drug dealer and that, while

4

they lived together, he often kept a white powdery substance, small bags, and an electronic scale in her home.

The District Court concluded that exigent circumstances justified the warrantless entry because the police had reasonably determined that evidence would be destroyed during the time needed to obtain a warrant. Because numerous warrants involving members of the same drug faction were being executed within a two-square-mile area of Norristown on the same morning, the District Court found that the police had reason to believe that Smith would learn of the other searches and dispose of any contraband in his possession. In addition, Smith's former neighbors saw police officers execute the warrant at 1222 Green Street, and Smith might therefore have been warned of an impending search by those neighbors.

The District Court held that the search warrant issued for 512 High Street was valid because Smith had already conceded that, if the warrantless entry was proper, then the evidence obtained during that entry would be sufficient to establish probable cause. As a result, the court denied Smith's motion to suppress with respect to the evidence seized from 512 High Street.

With respect to Smith's motion to suppress statements he made to the police officers, the District Court concluded that Smith's pre-arrest comments were unsolicited, and thus admissible, and that his post-arrest statement was given after he was duly informed of his constitutional rights, and thus also admissible. Accordingly, the court denied Smith's motion to suppress those statements.

Following the denial of his motion to suppress, Smith pleaded guilty to all four charges in the indictment. Therefore, on appeal, Smith only challenges the District Court's denial of his suppression motion. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. "We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (citing *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

III.

Smith argues that the search warrant issued for 1222 Green Street was invalid because the affidavit upon which it was based does not demonstrate probable cause. Smith admits that he lacks standing to challenge that warrant because he had already been evicted from the residence and, thus, had no reasonable expectation of privacy. However, Smith contends that the issue must still be addressed because, if the warrant for 1222 Green Street lacked probable cause, then the government is precluded from arguing that exigent circumstances justified the warrantless entry at 512 High Street. Smith appears to be arguing that, if the warrant for 1222 Green Street is found to have lacked probable cause, then there is also no probable cause for the entry into 512 High Street, which would make the exigent circumstances analysis irrelevant. While his logic is faulty,[1] to

---

1*See infra* at section IV, A.

the extent Smith's argument is a challenge to the entry into 512 High Street and not 1222 Green Street, we address the circumstances surrounding the entry of the latter residence, as well as the entry of the former.

IV.

The crux of Smith's appeal is his position that the warrantless entry into 512 High Street was improper. "Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." *Coles*, 437 F.3d at 365-66. No one argues that the entry into 512 High Street was consensual. Therefore, we must determine whether the District Court correctly concluded that the entry was justified by both probable cause and exigent circumstances.

A.

In finding that the police had probable cause to believe Smith was storing drugs at 512 High Street, the District Court relied in part on the information contained in the warrant for 1222 Green Street. That warrant was based on a confidential informant's statement that Smith sold cocaine, an officer's observation of Smith selling cocaine in a controlled buy, and evidence that Smith had been in communication with one of the main targets of the Norristown drug investigation. Despite Smith's contentions to the contrary, we need not decide whether that information alone creates probable cause, because we agree with the District Court that the decision to enter 512 High Street was not predicated solely upon the warrant for 1222 Green Street. After executing the warrant at 1222 Green

7

Street, but before entering 512 High Street, the police obtained a statement from his former girlfriend, who had been living with Smith until she evicted him earlier that week. She told the police that she believed Smith was a drug dealer. Also, she said that, right before she evicted Smith from her home, she found a bottle containing a white powder, a bottle labeled acetone, small bags, and an electronic scale, which she claimed belonged to Smith.

Smith argues that the information obtained from the girlfriend adds nothing that would establish probable cause with respect to 512 High Street. First, Smith attempts to cast doubt upon her credibility by pointing out that she was angry with him and had recently thrown him out of her home. However, her statement is corroborated by other evidence. Her belief that Smith was selling drugs is consistent with the evidence the police had obtained in order to procure the warrant for 1222 Green Street. Also, her statement that she emptied a bottle of white powder in the street and threw away Smith's electronic scale is corroborated by the remnants of those items that the police found near her home. Therefore, we find that there was a sufficient basis for the police to conclude that the former girlfriend's statements were credible.

Smith also contends that, because his former girlfriend had disposed of all the drug paraphernalia she found, there is no probable cause to believe that Smith was storing any contraband at 512 High Street. In other words, Smith claims that the police had no evidence that Smith had obtained replacements for the items she threw away. His argument is not persuasive. We have repeatedly held that "direct evidence linking the

8

residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (citing *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000)). Instead, probable cause can be based on circumstantial evidence which indicates there is a fair probability that contraband is present at the suspect's home. *Id.*

Specifically, in the case of drug dealers, this Court, and several other courts of appeal, have recognized that "evidence of involvement in the drug trade is likely to be found where the dealers reside." *Whitner*, 219 F.3d at 297-98 (citing cases from other circuits); *see also Burton*, 288 F.3d at 103-04; *Hodge*; 246 F.3d at 306. It is reasonable for the police to infer that evidence of drug dealing is present in a person's home if they have evidence of three preliminary facts: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104. In this case, the police had evidence of all of those facts before they entered 512 High Street.

First, the evidence used to obtain the warrant for 1222 Green Street and the information provided by the former girlfriend adequately support the premise that Smith was actually a drug dealer. Next, after the former girlfriend told the police that Smith was currently residing at 512 High Street, they knocked on the door at that address, and a man whom one of the officers identified as Smith looked out a window. That, along with the girlfriend's statement, was sufficient evidence for the police to conclude 512 High Street

9

was Smith's domicile. Lastly, evidence, including the girlfriend's statements, showed that Smith had stored drugs at his home in the past, which supports the premise that Smith's new residence would contain evidence of his drug activity. The fact that Smith looked out the window when the police knocked, but refused to open the door, also suggests that there was contraband inside. *Cf. Whitner*, 219 F.3d at 299 (holding that the suspect's attempt to conceal his address logically suggests that he was storing some evidence of illegal activity which he did not want to be discovered).

Therefore, the information that the police had acquired provided a substantial basis from which it was reasonable to infer that evidence of Smith's drug activity was being stored at 512 High Street. Under our precedent, that is enough to establish probable cause. *See Burton*, 288 F.3d at 103-04; *Hodge*, 246 F.3d at 306-07; *Whitner*, 219 F.3d at 298-99.

B.

Smith contends that, even if probable cause did exist, the warrantless entry into 512 High Street was nonetheless improper because the exigent circumstances exception to the warrant requirement did not apply. "[E]xigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Coles*, 437 F.3d at 366. The District Court determined that the entry was justified on the basis that evidence of Smith's drug activity would be removed or destroyed in the time needed to get a warrant.

Smith argues that the District Court's decision is contrary to this Court's holding in *United States v. Coles*, 437 F.3d 361 (3d Cir. 2006), because, according to Smith, the police created the exigency in this case by knocking on his door and announcing their presence. In *Coles*, a hotel manager informed the Federal Bureau of Investigation ("FBI") that he believed Coles had drugs in his hotel room. *Id.* at 362-63. After establishing surveillance of Coles's hotel room, law enforcement officers observed Coles and another man entering the hotel room. *Id.* at 363. The officers then attempted to gain access to the room by knocking on the door and claiming that they were hotel employees. *Id.* When that failed, the officers identified themselves as the police, and demanded that Coles let them in the room. *Id.* The officers then heard sounds of rustling and running footsteps, so they tried to open the door with an electronic key provided by the hotel manager, but were prevented from doing so by a bar latch over the door. *Id.* at 364. Coles eventually opened the door, and the officers found crack cocaine, cash, and a firearm in the room. *Id.* This Court held that the exigent circumstances exception to the warrant requirement did not apply in *Coles* because "the police impermissibly created the very exigency which they claim permitted the warrantless search." *Id.* at 362.

*Coles* is distinguishable from this case. In *Coles*, we emphasized that there was no urgency until the officers' decided to knock and announce their presence, because Coles had not detected the police surveillance. *Id.* at 371. In contrast, here the exigent circumstances existed before the police arrived at Smith's home. The police were in the process of executing more than forty warrants at the same time, in a coordinated effort to

11

obtain evidence before members of a drug conspiracy could warn one another of the investigation. After executing the warrant at 1222 Green Street and discovering that Smith no longer lived there, the police reasonably believed that, in the time needed to obtain a warrant for 512 High Street, Smith would learn of the other searches that morning and destroy evidence of his criminal activity. Therefore, the police did not create an exigency in order to gain entry into 512 High Street. The exigency was the result of an unforeseen circumstance – that Smith no longer lived at 1222 Green Street – and not the officers' decision to knock and announce.

Smith argues that the police officers' perceived exigency is insufficient to justify the warrantless entry because there was no evidence that he had actually been alerted to the other searches conducted that morning. However, the exigent circumstances exception does not require an officer to have knowledge that evidence is actually being removed or destroyed. *United States v. Rubin*, 474 F.2d 262, 266 (3d Cir. 1973). It is sufficient that the police officers reasonably believed, under the circumstances, that the delay necessary to obtain a warrant would result in the destruction of evidence. *Id.* at 269. In this case, it was entirely reasonable for the police to conclude, based on their extensive experience and common sense, that other members of Smith's drug conspiracy would try to alert him to a possible search. *Cf. id.* (holding that the warrantless entry into a suspect's home was justified after the suspect yelled, "Call my brother," even though the police did not know whether other individuals in the suspect's home were actually notified).

12

For the reasons discussed, we find that the police had a reasonable belief that Smith would destroy evidence of his drug activity in the time needed to procure a warrant for 512 High Street. Also, we conclude that our holding in *Coles* is inapplicable because the exigency in this case was not deliberately created by the officers in order to gain entry into Smith's residence. Therefore, the warrantless entry into 512 High Street was proper because of the existence of both probable cause and exigent circumstances.

V.

Smith admits that the evidence that was in plain view during the warrantless entry of 512 High Street was sufficient to establish probable cause for the warrant to search that residence. As a result, Smith concedes that, if we find the warrantless entry to have been justified, his challenge to that warrant must fail. Because we cannot fault the warrantless entry into 512 High Street, we find that the warrant, and the corresponding search of that residence, was valid.[2]

VI.

For the foregoing reasons, we will affirm the decision of the District Court.

---

2As noted above, Smith asserts that the District Court should have suppressed the statements he made to the police. However, Smith fails to articulate any basis for that conclusory assertion. Therefore, we will uphold the District Court's decision denying his motion to suppress those statements.